NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0306
     Facsimile: (213) 894-0141
     E-mail:     Andrew.Roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:19-CR-00375-ODW |
|---|---|
| Plaintiff, | GOVERNMENT'S *EX PARTE* APPLICATION FOR SUPPLEMENTAL FINDINGS FOR (1) CONTINUANCE OF TRIAL DATE AND (2) FINDINGS OF EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| MATTHEW NOEL TUMAMBING, and KELLIE DIANE TUMAMBING, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Andrew M. Roach, seeks an order supplementing the Court's June 8, 2020 Findings For (1) Continuance of the Trial Date and (2) Findings of Excludable Time Periods Pursuant to the Speedy Trial Act (the "June 8, 2020 Order").

///

///

///

1    This application is based on the attached memorandum of points

2   and authorities, and the file and records in this case.  Government

3   counsel has obtained the position of each defendant on this

4   application.  Both defendants object to any continuance of the trial

5   date beyond November 3, 2020.

6

7
     Dated: June 15, 2020            Respectfully submitted,
8
                                     NICOLA T. HANNA
9                                    United States Attorney

10                                   BRANDON D. FOX
                                     Assistant United States Attorney
11                                   Chief, Criminal Division

12

13                                   ANDREW M. ROACH
                                     Assistant United States Attorney
14
                                     Attorneys for Plaintiff
15                                   UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

1.   Defendants Matthew Noel Tumambing and Kellie Diane Tumambing are charged with two violations of 18 U.S.C. § 1344(2): Bank Fraud.

2.   The Indictment in this case was filed on June 25, 2019. Defendants first appeared before a judicial officer of the court in which the charges in this case were pending on July 31, 2019.  The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before October 9, 2019.  On July 31, 2019, the Court set a trial date of September 24, 2019.

3.   The Court has previously continued the trial date in this case from September 24, 2019 to July 21, 2020, and found the interim period to be excluded in computing the time within which the trial must commence, pursuant to the Speedy Trial Act.

4.   Defendants are released on bond pending trial.  The parties estimate that the trial in this matter will last approximately two to three days.

5.   By this application, the government seeks additional findings to supplement the Court's June 8, 2020 Order continuing trial to March 2, 2021.

6.   On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials scheduled to begin before April 13, 2020.  C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020).

1     7.     Also on March 13, 2020, the Court imposed health- and

2   travel-related limitations on access to Court facilities.  C.D. Cal.

3   General Order No. 20-03, In Re: Coronavirus Public Emergency, Order

4   Concerning Access to Court Facilities (March 13, 2020).

5     8.     On March 19, 2020, by Order of the Chief Judge, the Court

6   instituted its Continuity of Operations Plan ("COOP"), closing all

7   Central District of California courthouses to the public (except for

8   hearings on criminal duty matters) and taking other emergency

9   actions.  C.D. Cal. Order of the Chief Judge No. 20-042 (March 19,

10   2020).

11     9.     On March 29 and 31, 2020, recognizing COVID-19's continued

12   spread in the community, the Court took further action: implementing

13   video-teleconference and telephonic hearings and suspending all

14   grand-jury proceedings.  C.D. Cal. Orders of the Chief Judge Nos. 20-

15   043 (March 29, 2020) and 20-044 (March 31, 2020).  These orders were

16   imposed based on (1) the California Governor's declaration of a

17   public-health emergency in response to the spread of COVID-19, as

18   well as (2) the Centers for Disease Control's advice regarding

19   reducing the possibility of exposure to the virus and slowing the

20   spread of the disease.  See General Order 20-02, at 1.  The Chief

21   Judge has recognized that, during the COVID-19 crisis, all gatherings

22   should be limited to no more than 10 people and elderly and other

23   vulnerable people should avoid person-to-person contact altogether.

24   See Order of the Chief Judge No. 20-042, at 1-2.

25     10.     On April 13, 2020, the Court continued the suspension of

26   jury trials through June 1, 2020.  C.D. Cal. General Order No. 20-05,

27   In Re: Coronavirus Public Emergency, Further Order Concerning Jury

28   Trials and Other Proceedings (Apr. 13, 2020).

1    11.   On May 28, 2020, the Court issued a General Order extending

2   the Court's activated Continuity of Operations Plan through and

3   including June 22, 2020, describing the Court's plan for a Phased

4   Resumption of Operations, and providing no date for the resumption of

5   jury trials (the third and last phase of the plan).  C.D. Cal.

6   General Order No. 20-08, In Re: Coronavirus Public Emergency, Order

7   Concerning Phased Reopening of the Court (May 28, 2020).

8    12.   On March 19, 2020, both Los Angeles Mayor Eric Garcetti and

9   California Governor Gavin Newsom issued emergency orders requiring

10   residents to "stay home," subject to limited exceptions.  California

11   Executive Order N-33-20 (March 19, 2020); accord Safer at Home,

12   Public Order Under City of Los Angeles Emergency Authority ¶ 1 (March

13   19, 2020).  All schools in the Los Angeles Unified School District

14   are closed through the summer of 2020.

15    13.   Further, on June 1, 2020, Mayor Garcetti issued a public

16   order continuing to require residents to stay in their homes and

17   prohibiting public and private gatherings, subject to certain

18   exceptions.  Safer L.A., Public Order Under City of Los Angeles

19   Emergency Authority ¶¶ 1, 3 (June 1, 2020).  Residents are required

20   to wear a face mask and maintain a distance of at least six-feet from

21   others when leaving their residences.  Safer L.A. at ¶ 5.

22    14.   The Federal Bureau of Prisons (BOP) has likewise adopted

23   aggressive procedures to protect federal inmates.  On April 1, 2020,

24   all BOP facilities nationwide instituted a two-week lock-down, in

25   order to combat the spread of COVID-19 and to protect people in

26   custody.  See Federal Bureau of Prisons, COVID-19 Action Plan: Phase

27   Five (March 31, 2020), available at

28   https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp

1　. Under earlier orders, the BOP updated its quarantine and isolation

2　procedures to require all newly admitted inmates to be quarantined

3　for a minimum of 14 days.  Id.  It likewise suspended social

4　visitation and restricted inmate movement between facilities.  See

5　Federal Bureau of Prisons, Bureau of Prisons Update on COVID-19

6　(March 24, 2019), available at

7　https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_co

8　vid19_update.pdf.

9　　15.  As these orders reflect, the novel coronavirus pandemic is

10　a global emergency that is unprecedented in modern history.  As data

11　from both the Centers for Disease Control and the California

12　Department of Public Health reflect, the virus is spreading through

13　the United States community at an alarming rate.  See Coronavirus

14　Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and

15　Prevention (updated daily), available at

16　https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-

17　us.html; Coronavirus Disease 2019 (COVID-19), California Department

18　of Public Health (updated daily), available at

19　https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019

20　.aspx.

21　**II.   APPLICABLE LAW**

22　　The Speedy Trial Act generally requires a trial to begin within

23　70 days of indictment or initial appearance, whichever occurs later,

24　18 U.S.C. § 3161(c)(1), and entitles the defendants to dismissal of

25　the charges (with or without prejudice) if that deadline is not met,

26　§ 3162(a)(2).

27　　Certain periods of time, however, are excluded from the Speedy

28　Trial Act's trial clock.  Id. § 3161(h).  Some periods of time are

4

1   automatically excluded, including periods of delay resulting from the

2   absence or unavailability of the defendants or an essential witness.

3   Id. § 3161(h)(3)(A).  Other periods of time are excluded only when a

4   judge continues a trial and finds, on the record, that "the ends of

5   justice served by taking such action outweigh the best interest of

6   the public and the defendant in a speedy trial."  Id.

7   § 3161(h)(7)(A).

8        A pandemic, like a natural disaster or other emergency, grants

9   this Court the discretion to order an ends-of-justice continuance.

10  "Although the drafters of the Speedy Trial Act did not provide a

11  particular exclusion of time for such public emergencies (no doubt

12  failing to contemplate, in the more innocent days of 1974, that

13  emergencies such as this would ever occur), the discretionary

14  interests-of-justice exclusion" certainly covers this situation.

15  United States v. Correa, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001)

16  (addressing September 11 attacks); see Furlow v. United States, 644

17  F.2d 764, 767-69 (9th Cir. 1981) (affirming Speedy Trial exclusion

18  after eruption of Mount St. Helens); accord United States v.

19  Stallings, 701 F. App'x 164, 170-71 (3d Cir. 2017) (same, after

20  prosecutor had "family emergency"); United States v. Hale, 685 F.3d

21  522, 533-36 (5th Cir. 2012) (same, where case agent had "catastrophic

22  family medical emergency"); United States v. Scott, 245 Fed. Appx.

23  391, 394 (5th Cir. 2007) (same, after Hurricane Katrina); United

24  States v. Richman, 600 F.2d 286, 292, 293-94 (1st Cir. 1979) (same,

25  after a "paralyzing blizzard" and the informant was hospitalized).

26  **III. REQUEST FOR ADDITIONAL FINDINGS**

27       In this case, the Court should make additional findings

28  excluding the time between July 21, 2020 and March 2, 2021 under the

1  Speedy Trial Act pursuant to the ends-of-justice provision.

2  18 U.S.C. § 3161(h)(7)(A).

3  As the facts above demonstrate, the ends of justice amply

4  justify excludable time here.  The Court summarized several important

5  facts in its June 8, 2020 Order.  By this application, the government

6  seeks to set forth additional facts and circumstances as set forth in

7  the proposed order filed concurrently herewith.

8  Among other things, failure to continue this case will likely

9  make its completion impossible due to public-health risks and

10  concerns.  As the Court, the President, the California governor, the

11  Los Angeles mayor, and this Court's own General Orders have

12  recognized, we are in the midst of a grave public-health emergency

13  requiring people to take extreme measures to limit contact with one

14  another.  In addition to concerns for prospective jurors' health and

15  the ability of the Court to obtain--and maintain--an adequate number

16  of jurors, as set forth in the June 8, 2020 Order, an ends-of-justice

17  delay is also particularly apt because:

18  • The closure of Los Angeles's public schools (through the

19  summer of 2020), will require a significant number of

20  jurors to handle child-care responsibilities and thus be

21  unavailable for jury service.

22  • It will be exceedingly difficult for jurors--particularly

23  jurors over 65--to maintain adequate social distance

24  during jury selection, trial, and deliberations.  Indeed,

25  to leave their homes to come to court, such jurors would

26  violate the recommendations of the Centers for Disease

27  Control and multiple other public-health authorities.

28

6

1

2

3

4

5

6

- Counsel, United States Attorney's Office personnel, and
  victim-witness specialists have been encouraged to
  telework to minimize personal contact to the greatest
  extent possible.  Trial preparation necessarily involves
  close contact with witnesses, inconsistent with advice
  from the Centers for Disease Control.

7       In addition, due to the restrictions imposed by current public-

8   health concerns, it is also unreasonable to expect adequate

9   preparation for pretrial proceedings or for the trial itself within

10   Speedy Trial Act time limits.  Under these unusual and emergent

11   circumstances, denial of a continuance is likely to deny all counsel

12   reasonable time necessary for effective preparation, taking into

13   account the exercise of due diligence.  These concerns are set forth

14   in the proposed order.

15   **CONCLUSION**

16       Based on the foregoing, the government requests that the Court

17   enter the government's proposed order with additional factual

18   findings, filed concurrently herewith.

19

20

21

22

23

24

25

26

27

28